RONALD D. QUESINBERRY, PLAINTIFF v. AMANDA P. QUESINBERRY, DEFENDANT v. MARK AND LISA PARRISH AND ROGER AND LOUISE QUESINBERRY, INTERVENORS

No. COA08-239

(Filed 7 April 2009)

**1. Child Support, Custody, and Visitation— grandparents seeking visitation—custody dispute resolved**

The trial court did not err in a child custody case by denying defendant mother's motion to dismiss the grandparents' claim for visitation even though the parents entered into a consent judgment resolving their custody dispute because: (1) once grandparents have become parties to a custody proceeding, whether as formal parties or as de facto parties, then the court has the ability to award or modify visitation even if no ongoing custody dispute exists between the parents at the time; and (2) standing is measured at the time the pleadings are filed, and the trial court's jurisdiction once attached will not be ousted by subsequent events.

**2. Child Support, Custody, and Visitation— visitation schedule for grandparents—sufficiency of findings of fact**

The trial court erred in a child custody case by failing to make adequate findings of fact to explain and support its decision to

QUESINBERRY v. QUESINBERRY

[196 N.C. App. 118 (2009)]

take the grandparents' vacation visitation time out of defendant mother's summer custodial time while taking no vacation visitation from plaintiff father's custodial time, and the case is remanded for further findings of fact as to the visitation schedule established for the grandparents.

Appeal by defendant from orders entered 31 July 2007 and 3 August 2007 by Judge Mark Badgett in Surry County District Court. Heard in the Court of Appeals 22 October 2008.

*No brief filed on behalf of plaintiff-appellee. J. Clark Fischer for defendant-appellant.*

*Sarah Stevens for intervenors-appellees.*

GEER, Judge.

Defendant Amanda P. Quesinberry appeals the trial court's award of visitation with her son to intervenors Mark and Lisa Parrish and Roger and Louise Quesinberry, the boy's maternal and paternal grandparents ("the grandparents"). Defendant contends the trial court should have dismissed the grandparents' claim for visitation once she and plaintiff Ronald D. Quesinberry entered into a consent judgment resolving their custody dispute. Since the trial court allowed the grandparents to intervene in an order not challenged on appeal, the grandparents were parties and were entitled to have their claim for visitation decided notwithstanding the decision of the parents to resolve their differences in an interlocutory consent judgment. We agree with defendant, however, that the trial court's order setting out the visitation schedule does not include sufficient findings of fact to explain the trial court's reasoning in setting the schedule given the terms of the consent judgment. Consequently, we remand for further findings of fact regarding the basis for the visitation schedule.

## Facts

Plaintiff and defendant married on 16 October 1999; their son was born 11 October 2002. For the first four years of their son's life, he lived with his parents in Surry County, North Carolina, in a house 10 to 15 minutes away from both sets of grandparents, as well as his extended family and close friends. The grandparents saw the child weekly and developed a very close relationship with him.

On 30 April 2006, plaintiff and defendant decided to separate. Defendant moved out of the house they shared and began dating a

man named Jerry Goedert, with whom she lived on the weekends. At the time of trial, defendant planned to permanently move to Huntersville, North Carolina to live with Mr. Goedert. Defendant's relationship with the grandparents deteriorated significantly as a result of her decision to move to Huntersville, and the grandparents began to have difficulty getting permission from defendant to see their grandson.

On 1 November 2006, plaintiff filed this action against defendant, seeking custody of his son. On 11 April 2007, both sets of grandparents jointly filed a motion to intervene in order to seek visitation with their grandson. On 10 May 2007, the trial court entered an order allowing the grandparents' motion to intervene based on its conclusion that the grandparents were properly before the court because there was an ongoing custody action and the grandparents had alleged a substantial relationship with their grandson.

After two days of trial, plaintiff and defendant entered into a consent judgment filed on 13 June 2007. The grandparents were not parties to that consent judgment, and the memorandum of judgment did not address their pending claim for visitation. In the consent judgment, plaintiff and defendant agreed that they would share joint legal custody of their son. The child would live with plaintiff during the school year, although he would stay with defendant every other weekend. The parties agreed that their son would live with defendant during the summer, but, during that time, he would stay with plaintiff every other weekend. After setting out various other terms regarding the parents' agreement, the memorandum of judgment stated in closing:

> That this Memorandum shall be received by the District Court as the Memorandum of the parties agreement, to be entered by the Court, with the consent of the parties, a formal order containing the terms of this Memorandum of Judgment shall be prepared by F. Christian DiRusso, to be approved by W. David White and then signed as a the [sic] Final Order by the Court with regard to the issues set forth in this memorandum. Should no other formal order be prepared, then this order shall suffice as a final order in this action.

On 31 July 2007, the trial court entered an order awarding visitation to the grandparents. In that order, the trial court found that the grandson "ha[d] a meaningful relationship to both sets of grandparents having spent time with each set at least one day per week since

his birth." The court found that both sets of grandparents lived within minutes of the boy's former home and that they regularly attended his activities, had him spend the night at their homes, and were involved with his medical care. The court also found that defendant's move to Huntersville would move the child "80 miles away from the Plaintiff and the Intervenors" and would "require the parties to travel Interstate 77 for every exchange of the minor child." The court concluded that "[t]he best interest of the child will be served by allowing the grandparents/Intervenors to have regular and frequent contact with the minor child as allowed by G.S. 50-13.2(b1)."

Consequently, the court ordered that the grandparents have "extended and reasonable visitation" with their grandson. Each set of grandparents was awarded two overnight visits with the child in every month except August, to be taken from plaintiff's custodial time during the school year and from defendant's custodial time in the summer. The court also awarded each set of grandparents an additional seven-day period of vacation visitation during the summer, to be taken from the custodial time of defendant. Additionally, the court provided that during Christmas, each set of grandparents was entitled to an overnight visit to be taken from the time of plaintiff and a minimum of four hours on either Christmas eve or Christmas day. Finally, the court awarded the grandparents a minimum of two hours of visitation on their grandson's birthday and directed that "[t]here shall be such other periods of visitation with the grandparents/ Intervenors as the parties may mutually agree."

On 3 August 2007, the trial court entered an amended visitation order stating that "[t]he Intervenors have not been able to exercise their visitation this summer due to an inability of the parties to agree on a time and because an order has not been signed." The court directed that because the grandparents had not received their six overnights during the summer, they "shall be allowed to make them up by taking the extra third weekends awarded to the Defendant in September and October of 2007 and in January 2008." The court ordered that "[d]uring the future summers, the Intervenors will schedule the weeks in the summer by April 15 of each year. The four overnights every month shall be scheduled at least sixty days in advance." The court then concluded that "[e]xcept as clarified herein, the order entered on June 13, 2007 and signed on July 31, 2007 shall remain in full force and effect."

Defendant gave timely notice of appeal of the trial court's 31 July 2007 order allowing the grandparents' visitation and the amendment

to that order filed on 3 August 2007. Defendant did not appeal from the trial court's order filed on 10 May 2007 allowing the grandparents to intervene.

## Discussion

**[1]** Defendant first contends that once she and plaintiff entered into the consent judgment resolving their custody dispute, the trial court was required to dismiss the grandparents' claim for visitation. Defendant does not dispute that the grandparents had standing to intervene in the custody action and seek visitation at the time they filed their motion to intervene. As this Court has recently held, when "the custody of the child [is] still 'in issue' and [is] 'being litigated' by the parents," then "[t]he grandparents . . . [have] standing to seek intervention under N.C. Gen. Stat. § 50-13.2(b1) [(2007)]." *Smith v. Barbour*, 195 N.C. App. ——, ——, 671 S.E.2d 578, 584 (2009).

Defendant instead contends that even though the grandparents were properly allowed to intervene and were parties to the action, once the underlying custody dispute was resolved, the grandparents lost the right to obtain visitation. Defendant cites no authority to support this position, and *Sloan v. Sloan*, 164 N.C. App. 190, 195, 595 S.E.2d 228, 231 (2004), holds to the contrary.

In *Sloan*, this Court held that once grandparents have become parties to a custody proceeding—whether as formal parties or as *de facto* parties—then the court has the ability to award or modify visitation even if no ongoing custody dispute exists between the parents at the time. *Id.* The mother, in that case, had previously been awarded permanent custody, and the father and paternal grandparents were granted visitation. When the father was unexpectedly killed, the grandparents filed a motion to intervene and to modify the previous custody order to seek additional visitation. *Id.* at 192, 595 S.E.2d at 230. The mother filed a motion to dismiss the motions to intervene and modify, arguing, like defendant in this case, that the court had no jurisdiction to award visitation because of the lack of an ongoing custody dispute between the parents. *Id.* The trial court denied the mother's motions, allowed the grandparents to intervene, and granted the motion to modify. *Id.* at 192-93, 595 S.E.2d at 230.

On appeal, this Court affirmed, holding that "while it is clear that statutory authority and case law would support defendant's contention if the issue of grandparent visitation and/or custody had been raised for the first time when intervenors filed their motions," *id.* at 194, 595 S.E.2d at 231, the mother's arguments did not apply when the

trial court had already made the grandparents *de facto* parties to the action by granting them visitation at the time the mother was awarded custody. *Id.* at 195, 595 S.E.2d at 231. We think the principle expressed in *Sloan* applies with even more force here, as the grandparents were not just *de facto* parties that had previously been granted visitation in the custody dispute—they were actual, formal parties to the proceeding.

Defendant appears to be arguing that standing should be determined not only at the time of the filing of the pleadings, but also when the order is signed by the trial court, a contention that is contrary to our long-established principles of standing. Our courts have repeatedly held that standing is measured at the time the pleadings are filed. The Supreme Court has explained that "[w]hen standing is questioned, the proper inquiry is whether an actual controversy existed" when the party filed the relevant pleading. *Simeon v. Hardin*, 339 N.C. 358, 369, 451 S.E.2d 858, 866 (1994) (holding that plaintiffs had standing to challenge district attorney's authority to set court calendar because there were cases pending against them when they filed their complaint, even though cases were no longer currently pending). Moreover, "once [the trial court's] jurisdiction attaches, 'it will not be ousted by subsequent events.' " *Id.* (quoting *In re Peoples*, 296 N.C. 109, 146, 250 S.E.2d 890, 911 (1978), *cert. denied sub nom. Judicial Standards Comm'n of N.C.*, 442 U.S. 929, 61 L. Ed. 2d 297, 99 S. Ct. 2859 (1979)).

As the Court explained in *Peoples*:

"Jurisdiction is not a light bulb which can be turned off or on during the course of the trial. Once a court acquires jurisdiction over an action it retains jurisdiction over that action throughout the proceeding. . . . If the converse of this were true, it would be within the power of the defendant to preserve or destroy jurisdiction of the court at his own whim."

296 N.C. at 146, 250 S.E.2d at 911 (quoting *Silver Surprize, Inc. v. Sunshine Mining Co.*, 74 Wash. 2d 519, 523, 445 P.2d 334, 336-37 (1968)). *See also Hamilton v. Freeman*, 147 N.C. App. 195, 203, 554 S.E.2d 856, 860 (2001) (holding that plaintiffs had standing to challenge Department of Correction's modification of their sentences because they had standing at time they filed complaint), *appeal dismissed and disc. review denied*, 355 N.C. 285, 560 S.E.2d 803 (2002).

When plaintiff and defendant entered into their consent judgment, the grandparents' claim was still pending and subject to the

jurisdiction of the trial court. Defendant could not wipe out that claim simply by resolving her custody dispute with plaintiff. This Court has stressed that " '[a]fter intervention, an intervenor is as much a party to the action as the original parties are and has rights equally as broad. . . . Once an intervenor becomes a party, he should be *a party for all purposes.*' " *Williams v. Walker*, 185 N.C. App. 393, 397, 648 S.E.2d 536, 539 (2007) (quoting *Leonard E. Warner, Inc. v. Nissan Motor Corp.*, 66 N.C. App. 73, 78-79, 311 S.E.2d 1, 4-5 (1984)).

For example, although ordinarily a plaintiff is free to voluntarily dismiss her case at any time before she rests, when the defendant has asserted a counterclaim or some other claim for affirmative relief arising out of the plaintiff's claim, the plaintiff cannot take a voluntary dismissal without the defendant's consent. *Lafferty v. Lafferty*, 125 N.C. App. 611, 613, 481 S.E.2d 401, 402, *disc. review denied*, 346 N.C. 280, 487 S.E.2d 549 (1997). Similarly, here, the grandparents sought affirmative relief in the form of visitation, and thus their claim remained pending before the trial court even after plaintiff and defendant had agreed to dismiss their custody claims through the consent judgment. *See, e.g., In re Roxsane R.*, 249 S.W.3d 764, 772-73 (Tex. App.-Fort Worth 2008) ("If a party nonsuits its claims or its claims are dismissed, a remaining party's right to be heard on any of its pending claims for affirmative relief is not prejudiced, and the trial court retains jurisdiction over the remaining claims."); *State v. Northern Prods., Inc.*, 440 A.2d 1070, 1072 n.4 (Me. 1982) ("Even a dismissal by agreement of all parties except the intervenor will have no effect on the intervenor's petition, which remains for hearing and decision.").

In fact, the text of the consent judgment itself reflects plaintiff's and defendant's understanding that the consent judgment would not finally resolve all pending claims in the proceeding. The last paragraph of the order explicitly states that it would be the final order only for those issues addressed in the consent judgment: the sharing of custody between plaintiff and defendant. We, therefore, hold that the consent judgment between plaintiff and defendant did not divest the trial court of its jurisdiction to resolve the grandparents' claim for visitation, and thus the trial court properly denied defendant's motion to dismiss.

**[2]** Defendant's only other argument on appeal is that the trial court failed to make adequate findings of fact to explain and support its decision to take the grandparents' vacation visitation time out of de-

fendant's summer custodial time while taking no vacation visitation from plaintiff's custodial time. In *Lamond v. Mahoney*, 159 N.C. App. 400, 405, 583 S.E.2d 656, 660 (2003), this Court required that a trial court's detailed visitation award be supported by adequate findings of fact. In that case, the trial court "significantly extended the visitation of [the parent] with his son without making findings specifically related to those extensions." *Id.* The Court explained that while the order indicated that "the trial court implicitly resolved the issues raised by the evidence, . . . that resolution [was] not reflected in the findings of fact." This Court was, therefore, "unable to determine with any confidence whether the order [was] supported by evidence and whether [the trial court] properly applied the 'best interests' standard." *Id.* at 407, 583 S.E.2d at 661.

The same is true here. The trial court made no explanation in its findings of fact as to why it determined that it was preferable to take the majority of the grandparents' vacation visitation time out of defendant's custodial time. Moreover, because the trial court did not specifically address the terms of the consent judgment in its order awarding visitation, it is not clear that the trial court considered the possible interaction between the terms of the two orders. *Cf. In re K.S.*, 183 N.C. App. 315, 330-31, 646 S.E.2d 541, 549-50 (2007) (remanding for further findings and clarification of respondent's visitation rights because although trial court ordered visitation to take place according to "the visitation schedule," record indicated that there was no such schedule or other visitation plan in effect). Because the trial court did not explain its reasoning in the order, we have no basis upon which to determine whether the trial court's particular award was an abuse of discretion. We must, therefore, remand for further findings of fact as to the visitation schedule established for the grandparents.

Affirmed in part; vacated and remanded in part.

Judges ROBERT C. HUNTER and ELMORE concur.