IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-457

Filed 4 February 2026

Franklin County, No. 20CVD000012-340

SANDRA FLORES, Plaintiff,

v.

OSCAR GUTIERREZ, Defendant.

Appeal by Plaintiff from order entered 22 January 2025 by Judge S. Katherine Burnette in Franklin County District Court. Heard in the Court of Appeals 13 January 2026.

> *Tickle Law Office PLLC, by Lawrence Edward Tickle, Jr., for Plaintiff-Appellant.*
>
> *No brief for Defendant-Appellee.*

COLLINS, Judge.

Plaintiff, Sandra Flores, appeals from an order establishing child support. Plaintiff argues that the trial court erred by (1) treating prior "closed" docket entries as indicative of a permanent child support order; (2) failing to relate the child support obligation back to the date of filing; and (3) imputing business expenses to Defendant, Oscar Gutierrez,[1] without sufficient evidentiary support. We vacate and remand in

---

[1] The order on appeal misspells Defendant's name as "Guiterrez" instead of "Gutierrez," and we have corrected the error in the case caption on appeal.

part and affirm in part.

## I.    Background

Plaintiff and Defendant married in 2013, separated in 2018, and share one minor child.  Plaintiff filed a complaint for custody, child support, and equitable distribution on 6 January 2020.[2]  Defendant filed an answer and counterclaims in October 2020.

Over the next year, Plaintiff noticed the case for hearing several times, and six continuances were entered for various reasons, including the parties' consent, inclement weather, and attorney unavailability.  On 9 September 2021, the parties entered into a consent order for temporary custody and to remove the child support and equitable distribution issues from the calendar for mediation.  On 10 September 2021, the district court entered an Order of Removal, "find[ing] that the parties have agreed to remove this matter from the calendar" and removing the case from the trial docket of active cases.

On 28 March 2022, Plaintiff noticed her child support claim for hearing.  She filed an amended notice on 31 May 2022.  The matter was twice continued, once by agreement and once on Defendant's motion.

The parties entered into a memorandum of judgment on 27 July 2022, establishing "temporary child support" of $250 per month, "subject to a final

---

[2] The complaint was filed just prior to the start of the Covid pandemic.

worksheet being filled out and entered"; ordering Defendant to provide Plaintiff with certain financial documents from 2021 and 2022 by 1 September 2022; agreeing to schedule mediation by 1 September 2022; and continuing the matter to 31 August 2022. The memorandum of judgment was entered as a Temporary Child Support and Scheduling Order on 4 August 2022. By agreement of the parties on 31 August 2022, the matter was continued to 5 October 2022.

On 5 October 2022, the matter came on for hearing. The trial court entered an Order of Removal stating:

> THIS CAUSE coming on for hearing and it appearing to the Court that all issues have been resolved.
>
> IT IS, THEREFORE, ORDERED that the case be removed from the trial docket of active cases, and placed as an inactive file without prejudice to previous orders herein, and without prejudice to the entry of motions and orders in the future.

On 10 February 2023, Plaintiff noticed her child support claim for hearing on 15 March 2023. She amended the notice three days later for hearing on 26 April 2023. The matter was then continued numerous times over the next fifteen months for various reasons, including counsel unavailability and the parties' agreement.

The parties stipulated to the entry of a Temporary Child Support Order on 9 May 2024. The temporary order increased "[t]he prior temporary amount of $250[]" per month to $645 per month, effective 1 May 2024; continued the matter to 18 September 2024; ordered the parties to exchange certain financial documents from

2023 and 2024; and noted the order was "temporary and entered without prejudice to either Party." The matter was continued by agreement to December 2024.

Plaintiff filed a motion for contempt and order to show cause for Defendant's failure to exchange the required financial documents. Defendant was ordered to appear on 4 December 2024. On 4 December 2024, the matter was continued by agreement to 18 December 2024, and the parties submitted updated financial documents and proposed worksheets to the trial court via email. Plaintiff's submissions included Defendant's 2023 tax returns. Defendant's submissions consisted of a worksheet and an email asserting estimated income and business expenses but provided no supporting financial documents.

On 22 January 2025, based on the parties' email submissions with their consent, the trial court entered a child support order. The order found, among other things, that "[t]he case was closed on September 9, 2021" and "closed again in October 2022[,]" Plaintiff's worksheet did not account for Defendant's business expenses, and Defendant's income should be determined using his 2023 tax information. Defendant was ordered to pay $779 in monthly child support starting on 1 January 2025. Defendant was also ordered to pay $134 per month in arrears ($779-$645) for the period of 1 May 2024 to 1 January 2025. The trial court did not relate Defendant's child support obligation back to the date of Plaintiff's filing the complaint on 6 January 2020.

Plaintiff timely appealed.

## II. Discussion

### A. Temporary order

By Plaintiff's first two arguments, she asserts that the trial court erred by finding the child support case had been "closed" and treating the 4 August 2022 temporary child support order as a permanent order.

"[W]hether an order is temporary or permanent in nature is a question of law, reviewed on appeal de novo." *Smith v. Barbour*, 195 N.C. App. 244, 249 (2009) (citation omitted). We have said in the child custody context that generally "an order is temporary if either (1) it is entered without prejudice to either party, (2) it states a clear and specific reconvening time in the order and the time interval between the two hearings was reasonably brief; or (3) the order does not determine all the issues." *Senner v. Senner*, 161 N.C. App. 78, 81 (2003) (citations omitted). "A trial court's designation of an order as 'temporary' or 'permanent' is neither dispositive nor binding on an appellate court." *Woodring v. Woodring*, 227 N.C. App. 638, 643 (2013) (citation omitted). "These rules logically apply to the child support context as well." *Sarno v. Sarno*, 235 N.C. App. 597, 600 (2014).

Here, the parties entered into two different support agreements prior to the 22 January 2025 entry of the child support order on appeal. First, the parties entered into a memorandum of judgment on 27 July 2022, establishing "temporary child support" of $250, "subject to a final worksheet being filled out and entered"; ordering the parties to exchange certain financial documents; agreeing to set a mediation date;

and continuing the matter to 31 August 2022. The memorandum of judgment was entered as a Temporary Child Support and Scheduling Order on 4 August 2022.

The parties stipulated to the entry of a second Temporary Child Support Order on 9 May 2024. The temporary order increased "[t]he prior temporary amount of $250[]" per month to $645 per month, effective 1 May 2024; continued the matter; ordered the parties to exchange certain financial documents; and noted the order was "temporary and entered without prejudice to either Party."

Each order specifically noted its temporary nature, was entered without prejudice to either party, and stated a clear and specific reconvening time in the relatively near future. These orders were both temporary. *See Senner*, 161 N.C. App. at 81.

A temporary order may, however, become permanent by operation of time. *See Lawrence v. Lawrence*, 294 N.C. App. 355, 362 (2024).

> A temporary order may become permanent by operation of time, when neither party sets the matter for a hearing within a reasonable time. Thus, the focus is on whether a hearing was requested, rather than if it was heard, as a party should not lose the benefit of a temporary order if she is making every effort to have the case tried but cannot get it heard.

*Id.* at 362 (cleaned up). Whether the matter was set for hearing within a reasonable period of time is addressed on a case-by-case basis. *Id.*

In *LaValley v. LaValley*, a temporary order became permanent because twenty-three months was not a reasonable time to forgo seeking a hearing on permanent

custody and no issues had been left unresolved. 151 N.C. App. 290, 292-93 (2002). In *Woodring*, a period of twelve months was reasonable because "the parties were before the court at least three times in the intervening period between the entry of the temporary order and the scheduled permanent custody hearing." 227 N.C. App. at 644. In *Senner*, a twenty-month delay was reasonable where the record contained evidence that the parties were negotiating a new custody arrangement during the relevant period. 161 N.C. App. at 81.

Here, both before and after the parties entered into the temporary child support agreements, Plaintiff consistently and timely calendared her claim for hearing. Numerous orders continuing the matter were entered for various reasons, most of which were by consent and many of which were to accommodate Defendant's counsel. Furthermore, it is apparent from various orders that the parties were trying to mediate the child support issue. At no point was the case inactive for more than six months. Unlike in *LaValley* and as in *Woodring* and *Senner*, the delay here was reasonable and the 4 August 2022 temporary child support order did not become permanent by operation of time.

The 4 August 2022 temporary child support order also did not become permanent as a result of the trial court's 5 October 2022 Order of Removal. First, the trial court's observation that it "appear[ed] to the Court that all issues have been resolved" is neither a finding of fact nor a conclusion of law – it thus has no legal effect on the parties or the case. Furthermore, removing the case "from the trial

docket of active cases, and plac[ing] as an inactive file" does not permanently "close" the case.

"[T]he removal of a case from a court's 'active docket' is the functional equivalent of an administrative closing, which does not end a case on its merits or make further litigation improbable." *Penn-Am. Ins. Co. v. Mapp*, 521 F.3d 290, 295 (2008) (citation omitted). In *Greenshields, Inc. v. Travelers Prop. Cas. Co. of Am.*, we recognized that a superior court's "'Order of Dismissal,' ordering 'that this case be removed from the trial docket of active cases and placed as a closed file without prejudice to previous orders herein, and without prejudice to the entry of motions and orders in the future,' "'did not dismiss the action but simply administratively closed the file and removed it from the trial court's active docket.'" 245 N.C. App. 25, 27, 34 (2016).

Here, while the trial court's Order of Removal "administratively closed the file and removed it from the trial court's active docket[,]" *id.*, it did not end the case on the merits and render the 4 August 2022 temporary child support order permanent.

For these reasons, the trial court erred by treating the 4 August 2022 temporary order as a permanent child support order.

## B. Effective date of child support

Plaintiff next argues that the trial court erred by awarding permanent child support from 1 May 2024, the effective end date of the 4 August 2022 temporary order, instead of 6 January 2020, the date she filed her child support claim.

"[F]or purposes of computing child support, the portion of the award representing that period from the time a complaint seeking child support is filed to the date of trial, is in the nature of prospective child support." *State ex rel. Fisher v. Lukinoff*, 131 N.C. App. 642, 646-47 (1998) (quotation marks and citations omitted). As "prospective child support is to be awarded for the time period between the filing of a complaint for child support and the hearing date, Section 50-13.4(c) applies and requires application of the [Child Support] Guidelines with respect to that period." *Id.* at 647 (citations omitted). Furthermore, the existence of a temporary child support order does not alter the presumption that permanent prospective support begins at filing. *Cole v. Cole*, 149 N.C. App. 427, 433-34 (2002).

The Guidelines are presumptive for both the pre-order period and the ongoing award and can be deviated from only if the trial court finds, based on competent evidence, that application of the Guidelines would be "unjust or inappropriate." N.C. Gen. Stat. § 50-13.4(c) (2024). Any deviation—whether changing the amount owed between filing and hearing or altering the start date of the obligation—requires written findings addressing why deviation from the Guidelines is appropriate. *Sain v. Sain*, 134 N.C. App. 460, 466 (1999). Here, Plaintiff filed her child support claim on 6 January 2020. By order entered 22 January 2025, the trial court ordered Defendant to pay child support in the amount of $779 essentially starting on 1 May 2024, the effective end date of the 4 August 2022 temporary order, and not 6 January 2020, the date she filed her child support claim. Although the trial court deviated

from the 6 January 2020 presumptive start date of the obligation, the trial court did not find that application of the Guidelines would be "unjust or inappropriate," N.C. Gen. Stat. § 50-13.4(c), and made no findings addressing why deviation from the Guidelines is appropriate. Accordingly, the trial court erred.

## C. Defendant's business expenses

Plaintiff next argues the trial court erred by imputing business expenses to Defendant based on his 2023 tax return rather than requiring current documentation. Plaintiff essentially argues that the trial court should have disregarded all business expenses because Defendant failed to produce current documentation.

The Guidelines require courts to consider "current income," but expressly permit reliance on past income where appropriate. *Simms v. Bolger,* 264 N.C. App. 442, 453 (2019). Courts may use prior-year tax returns when current documentation is incomplete or unreliable. *Id.* Child support orders are reviewed for abuse of discretion. *Leary v. Leary*, 152 N.C. App. 438, 441 (2002).

Here, Defendant submitted a worksheet and an email asserting estimated income and expenses. Defendant failed to provide updated business records despite court orders. The trial court therefore relied on Defendant's 2023 tax return—the most recent verified financial information available.

The trial court's reliance is consistent with *Simms*, which permits reliance on past income where current information is lacking or unreliable. 264 N.C. App. at 453.

The trial court's findings of fact are supported by competent evidence and reflect a reasoned effort to determine Defendant's actual income based on the best available evidence. The trial court thus did not abuse its discretion.

## III.    Conclusion

The trial court erred by concluding that Defendant's child support obligation started on 1 May 2024 without further findings of fact to support this date. The trial Court did not err by imputing business expenses to Defendant. We vacate the order and remand the matter to the trial court to enter an order consistent with the Guidelines or for findings of fact to support a deviation from those Guidelines and an order consistent with those findings.

VACATED AND REMANDED IN PART; AFFIRMED IN PART.

Judges ZACHARY and CARPENTER concur.